UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) | |
| Plaintiff, ) ) | No. 6:20-CR-50-REW-HAI |
| v. ) ) | RECOMMENDED DISPOSITION |
| STEPHEN ALLEN PRICE, JR., ) ) | |
| Defendant. ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Wier, the Court considers reported violations of supervised release conditions by Stephen Allen Price, Jr. D.E. 21. District Judge Walter S. Smith, Jr., entered a judgment against Defendant in the Western District of Texas on October 13, 2010, upon a plea of guilty to one count of conspiracy to possess with intent to distribute and distribution of methamphetamine. D.E. 1-3 at 1. Defendant was sentenced to 151 months of imprisonment followed by three years of supervised release. *Id*. at 2-3. On August 12, 2020, Defendant was released from custody to begin his first term of supervision. On September 10, 2020, jurisdiction was transferred to this District. D.E. 1.

On November 10, 2020, a Report on Offender Under Supervision was submitted to the Court outlining Defendant's use of methamphetamine and oxycodone, and revocation proceedings were not initiated at that time. On March 31, 2021, Defendant's term of supervised release was revoked after being adjudicated guilty of the following subsequent violations: failure to report and submit written reports as directed; unlawful use of controlled substances; commission of a crime; and unlawful use of controlled substances. Defendant was sentenced to

twenty-one months of imprisonment, followed by a one-year term of supervised release. On October 7, 2022, Defendant was released from custody to resume his supervised release. On October 11, 2022, Defendant was referred to Bouncing Back Counseling for outpatient substance abuse and mental health treatment, with drug testing.

## I.

On January 23, 2023, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report,

> On December 15, 2022, Price was contacted at his residence due to an ongoing issue with Bouncing Back Counseling and this officer not being able to reach the defendant by telephone. Bouncing Back Counseling made several attempts to contact the defendant for drug testing and to set up appointments for counseling. Price was directed to contact Bouncing Back Counseling immediately to set up an appointment. The defendant confirmed he would do so. Price made contact with Bouncing Back Counseling on December 19, 2022, and made an appointment for counseling on December 21, 2022. Price attended the scheduled counseling session on December 21, 2022, and a subsequent counseling session was scheduled for December 26, 2022. The defendant did not attend the counseling session on December 26, 2022, and has made no further contact with Bouncing Back Counseling. Bouncing Back has made several attempts to contact Price since December 21, 2022, all of which have been unsuccessful.
>
> On January 11, 2023, two attempts were made to contact the defendant at his residence, which were unsuccessful. A notice was left at the residence instructing Price to call this officer immediately.
>
> On January 17, 2023, two attempts were made to contact the defendant at his residence, which were unsuccessful. A notice was left at the residence instructing Price to report to the Probation Office in London, Kentucky, on January 18, 2023, at 9:00 a.m.
>
> The defendant failed to report to the Probation Office on January 18, 2023, and his current whereabouts are unknown.

Stemming from this conduct, Violation #1 alleges that Defendant violated the condition requiring him to enroll and participate in a substance abuse treatment program. This is a Grade

C violation. Based on his failure to follow the instructions of the notices left at his residence on January 11 and 17, Violation #2 alleges that Defendant violated the condition requiring him to follow the instructions of the probation officer. This is also a Grade C violation.

On February 9, 2023, the USPO issued the Supervised Release Violation Report Addendum ("the Addendum"). The Addendum charges three additional violations. The Addendum states, "On February 9, 2023, the defendant submitted a urine specimen which appeared to test positively for buprenorphine (Suboxone); marijuana; and methamphetamine, via instant testing device. The defendant admitted to the use of all listed substances and signed a Prob 4-Positive Drug Test Admission Report." Stemming from this conduct, Violations #3, #4, and #5 allege that Defendant violated the conditions prohibiting him from committing another federal, state, or local crime and unlawfully possessing a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violations #3, #4, and #5 are Grade B violations because Defendant's buprenorphine, methamphetamine, and marijuana possession, on account of his prior drug conviction, constitute Class E felonies under 21 U.S.C. § 844(a).

## II.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on February 14, 2023. D.E. 22. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required.

At the final hearing on March 21, 2023, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 30. Defendant also waived a formal hearing and stipulated to

the violations set forth in the Report and the Addendum. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of counsel. *Id*.

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that constitutes Grade C and Grade B violations under the Guidelines. *See* U.S.S.G. § 7B1.1(a).

During the final hearing, the government recommended a below-Guidelines sentence of eighteen months of imprisonment with no supervised release to follow. Defense counsel also recommended a below-Guidelines sentence of twelve months and one day of imprisonment with no supervised release to follow.

The government first addressed its recommendation that no additional term of supervised release be imposed. The government noted that the underlying conviction involved Defendant being responsible for about 200 grams of methamphetamine. While this is not an insignificant amount, the government argued that it is not the high quantity typically tied to leaders of drug trafficking organizations, who may warrant lifetime supervision. The government conceded that lifetime supervision may also be appropriate for career offenders, especially if crimes of violence are committed in conjunction with drug trafficking. However, the government argued that,

although Defendant's prior burglary convictions involved violent conduct, those offenses did not involve violence tied to drug trafficking.

The government further argued that the current violations and original conviction are attenuated. Although Defendant continues to use controlled substances, his violations do not involve trafficking. The government expressed concern over Defendant's prior burglary convictions, but again noted that they are not directly tethered to the underlying federal conviction because he did not use the burglary proceeds to benefit his drug trafficking. Because there is no evidence that Defendant has been trafficking while on release, the government also concluded that an additional term of supervision would not substantially protect the public. Rather, a term of imprisonment would better address this factor.

The government stated that rehabilitation is very unlikely to be accomplished through supervised release. Defendant's methamphetamine use began in 2005, and, at the time of underlying conviction, he could not estimate how much methamphetamine he was smoking daily. The government noted the various treatment opportunities Defendant has been afforded while incarcerated and on supervised release. Despite these resources, Defendant has been unable to overcome his addiction.

The government also stated the breach of the Court's trust is significant, especially given that Defendant has continued to abuse controlled substances. However, the government argued that Defendant's written admission and eventual stipulation are mitigating factors.[1]

---

[1] The government originally stated Defendant's written admission form specified how often he was using controlled substances, which it characterized as more mitigating than a generic or blanket admission. Defense counsel also referenced the admission form that included how often Defendant had been using controlled substances. As the Court and USPO pointed out, however, counsel were mistakenly referring to Defendant's admission of drug use in 2021, and his recent admission had no such detail.

The Court noted that, during the previous revocation proceedings, District Judge Wier rejected the defense's request that no additional term of supervision be imposed based on future violations being near-certain due to Defendant's attitude. *See* D.E. 27 at 28-30. Given the current violations are the same as those from the prior revocation, the Court asked the government to explain why no additional term of supervision would be appropriate. The government responded that there is no hope of rehabilitation for Defendant while on supervised release. Thus, protecting the public would be the only other purpose of additional supervision. But the government viewed this as a minor benefit as it believes Defendant poses little risk of returning to trafficking. Sufficient protection, in its view, will be afforded through imprisonment.

Defense counsel stated that Defendant has a lengthy substance abuse history, and noted he abused cocaine prior to 2005 when he began using methamphetamine. Defense counsel argued that Defendant began supervised release on the right foot by going to treatment. However, Defendant relapsed and knew he would be kicked out of the Bouncing Back program if he returned and failed a drug test. Thus, Defendant absconded. Defense counsel also argued that lifetime supervision is designed to monitor the activity of large-scale traffickers, rather than small traffickers like Defendant. Defense counsel stated that supervised release is a proverbial hammer hanging over Defendant's head and places him in a hopeless situation, where every relapse will be met with a term of imprisonment. Without specificity, the defense stated that Defendant's mother passed away during his prior revocation term and now his father is sick as well.

The Court asked defense counsel why lifetime supervision is not also appropriate for career offenders like Defendant. Defense counsel noted that Defendant's current criminal

history category is based on the 2010 calculation for the underlying conviction. Defense counsel argued that, if Defendant were prosecuted for a new crime today, two of the convictions that contributed to classifying him as a career offender would not be counted due to their age and no other convictions would trigger the career offender status. Defense counsel further estimated that Defendant's criminal history category would now be three or four, which would lead to a Guidelines Range of eight to fourteen months of imprisonment for the current violations. Thus, defense counsel argued that Defendant's criminal history category substantially overrepresents his conduct and warrants a variance or a departure under U.S.S.G. § 4A1.3(b)(1).

Defense counsel also asked the Court to recommend that Defendant serve any term of imprisonment at FCI Gilmer where his brother is housed, which was included in Judge Wier's prior revocation judgment. *See* D.E. 15 at 2.

The Court asked the government to respond to the departure request under U.S.S.G. § 4A1.3(b)(1). The government stated that this provision does not apply to supervised release violations. Further, the government argued that Defendant's criminal history category was six before the career offender status was applied. The government also stated that multiple burglary convictions were not included in the criminal history calculation because they were committed in a "spree." However, the government acknowledged that Defendant's criminal history indicates he is less violent than in the past.

Defense counsel did not dispute that U.S.S.G. § 4A1.3(b)(1) does not apply to supervised release violations, but stated that the arguments regarding Defendant's criminal history could be considered under the § 3553 factors.

Defendant declined to address the Court directly.

### III.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of the Class C felony conspiracy to possess with the intent to distribute and distribution of methamphetamine, in violation of 21 U.S.C. § 846. *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C § 3559(a)(3). His conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).

Under § 7B1.1, Defendant's admitted conduct would qualify as Grade C violations with respect to Violations #1 and #2, and Grade B violations with respect to Violations #3, #4, and #5. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade B violations, Defendant's Range, under the Revocation Table of Chapter 7, is twenty-one to twenty-seven months. U.S.S.G. § 7B1.4(a); *see* U.S.S.G. §7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."). However, because of the statutory maximum imposed by 18 U.S.C. § 3583(e)(3) for imprisonment when the underlying offense of conviction

is a Class B felony, the Range effectively becomes twenty-one to twenty-four months. Both parties agreed to this calculation of the Range.

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's original conviction carries no maximum term of supervised release. 21 U.S.C. § 841(b)(1)(C).

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *United States v. Crace*, 207 F.3d 833, 835 (6th Cir. 2000) (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Defendant did not request or argue in favor of this exception and the record does not support its application.

The presence of Grade B violations also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

## IV.

The Court has reviewed the entire record, including the Report, the Addendum, their accompanying documents, the transcript of the prior revocation hearing (D.E. 27), and Defendant's underlying judgment and sentencing materials. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant pled guilty to a conspiracy to possess with intent to distribute and distribution of methamphetamine and received a necessary, lengthy sentence to address his criminal behavior.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. Defendant's use of controlled substances creates a risk of recidivism. Additionally, his use fosters the illegal manufacture and distribution of controlled substances, which poses a dangerous risk to the community. A term of imprisonment is necessary to protect the public and deter future criminal conduct.

The Court also considers the need to provide Defendant with training and treatment. Defendant clearly needs treatment to address his addiction. However, the nature of the violations, including his abscosion and seemingly uncontrollable abuse after completing RDAP and participating in other treatment programs, do not warrant further investment of public resources.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction

primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The breach of trust in this case is particularly significant. Defendant has once again violated the conditions of supervision and did so just two months following his release. This is the same conduct that led to his last revocation, reflecting that no progress has been made since that time.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is usually addressed by a recommended sentence within the Guidelines Range. Here, the parties both seek a sentence below the Range, but to varying degrees. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)). Here, the Court is unable to articulate a justification for deviating downward that is consistent with the relevant sentencing factors and policy statements.

The Court recommends a sentence of incarceration of twenty-one months. Although the parties made thoughtful and thorough arguments for below-Guidelines sentences, the conduct underlying the current violations is the same that led to the last revocation and reflects unacceptable disobedience of authority. Judge Wier presciently observed during the prior revocation hearing that Defendant's attitude was "no matter what you do, Judge, I'm going to go

out and use." D.E. 27 at 28. The Court sympathizes with Defendant's clear struggle to step out of the long shadow his addiction has cast over his life. But his current violations essentially mirror what led to the previous revocation and sentence of twenty-one months. Instead of fostering compliance, Defendant responded to that sentence by violating again, in the same manner, in just a couple of months. No identifiable factor in the record justifies a sentence below the Range, and the terms proposed by the parties do not sufficiently address the flagrant breaches of trust committed by Defendant. Looking back in time to suggest that Defendant's original conviction involved smaller quantities than typically seen today or that his criminal history calculation would be different if charged today overlooks Defendant's conduct on supervision and need to address the multiple breaches of trust. For the reasons discussed above, the Court finds that a term of imprisonment of twenty-one months is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction does not carry a maximum term of supervised release due to the nature of the underlying offense. *See* 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C). The prior one-year term of supervision was meant to motivate Defendant with an attainable goal. However, Defendant violated the conditions of supervision swiftly after his release and has given the Court no hope that another term of supervision would be successful. Further, the recommended imprisonment term is sufficient to protect the public. Thus, the Court recommends that no additional term of supervision be imposed.

**V.**

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

1. That Defendant be found guilty of the violations;

2. Revocation with a term of twenty-one months of imprisonment;

3. No term of supervised release to follow; and

4. Defendant be designated to FCI Gilmer, where a family member is also housed.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Wier's docket upon submission.

This the 27th day of March, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge